**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **R.P.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-839-ALM** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

R.P.[1] ("Plaintiff"), proceeding *pro se*,[2] brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA"). (Doc. 1). The Commissioner filed the Administrative Record ("AR") (Doc. 7), and the parties have fully briefed the issues. (Docs. 18, 26).[3] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C.

[1] For privacy purposes in light of the sensitive information disclosed in Social Security cases, the Court refers to Plaintiff by initials only.

[2] A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But the court cannot serve as Petitioner's advocate, creating arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[3] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

§ 636(c)(1). (Docs. 12, 13). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I. The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant for social security benefits is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[4] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national

[4] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

economy in view of [claimant's] age, education, and work experience." *Id.* "The claimant is entitled to disability benefits only if [the claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## II. Procedural History

Plaintiff filed an application for disability insurance benefits, which was denied initially and on reconsideration. (AR, at 17). An administrative hearing was held on May

28, 2024. (*Id*. at 34-82). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 17-28). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**III. The Administrative Decision**

Relevant to Plaintiff's claims, the ALJ found at Step Two of the analysis that Plaintiff had the severe impairments of cervical degenerative disc disease status post fusion with central canal stenosis; lumbar degenerative changes, facet hypertrophy with radiculopathy; type 2 diabetes mellitus; and class III obesity. (AR, at 20). The ALJ also found that Plaintiff had a number of non-severe impairments, including "a history of a closed head injury without loss of consciousness" and "benign paroxysmal positional vertigo." (*Id*.) The ALJ found that "[t]hese impairments establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on [Plaintiff's] ability to meet the basic demands of work activity." (*Id*.) She also specified that she "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (*Id*).

After finding at Step Three that Plaintiff's impairments did not meet or medically equal any of the listed impairments, (*id.* at 22), the ALJ determined Plaintiff had the RFC to:

> lift and carry 20 pounds maximum occasionally, and 10 pounds frequently. He can stand and walk for 4 hours of 8. He can sit for 6 hours of 8. He can never climb ladders, ropes, or scaffolds. He can occasionally kneel, crawl,

> and climb ramps and stairs. He can frequently stoop and crouch. He requires an assistive device for ambulation.

(*Id.*) The ALJ determined that Plaintiff could not perform his past relevant work, but there were jobs that existed in significant numbers in the national economy that he could perform. (*Id.* at 25-27). Thus, the ALJ found Plaintiff was not disabled. (*Id.* at 28).

## IV. Claims Presented for Judicial Review

Plaintiff raises five issues in his opening brief, addressed in turn below, challenging the ALJ's assessment of the evidence and in support of his request for the Court "to reverse the Decision made by the ALJ or refer the case back to the ALJ for further consideration in light of missing evidence and new arguments." (Doc. 1, at 3).

The Commissioner asserts that substantial evidence supports the ALJ's assessment of Plaintiff's RFC. (Doc. 26, at 3-6). The undersigned agrees.

## V. The ALJ Properly Considered the Record Evidence, and the RFC Is Supported By Substantial Evidence.

### A. The ALJ Adequately Considered Plaintiff's Vertigo Symptoms.

On page 2 of his Opening Brief, (Doc. 18), Plaintiff draws the Court's attention to the ALJ's Step Two discussion of his benign paroxysmal positional vertigo, where the ALJ stated "[h]istorically, [Plaintiff] was advised to discuss vestibular rehabilitation. Several years later, he was to follow up with an ENT specialist for this. [Plaintiff's] physical examinations, as well as his lack of treatment for this issue, support a nonsevere finding." (AR, at 20) (record citations omitted). Plaintiff accurately points out record evidence that he did undergo vestibular rehabilitation. (Doc. 18, at 2) (citing AR, at 448) (Dr. Hume

progress note dated 8/13/20, stating "[t]he patient has been undergoing treatment with cervical and vestibular physical therapy.")). Plaintiff also asserts that he

> had asked the doctor if an ENT would be able to correct the vestibular issues and was told by the doctor that it would probably not make a difference in the outcome of treatment. If the Plaintiff was to follow up with an ENT under Workers Compensation rules the Plaintiff would have to or risk benefits from Workers Compensation. No referral was made.

(Doc. 18, at 2). Although not entirely clear, the undersigned construes Plaintiff's argument as challenging the ALJ's rationale that his failure to seek treatment for vertigo supports the conclusion that the vertigo is non-severe. However, the ALJ also based his non-severe finding on Plaintiff's "physical examinations." (AR, at 20).

Moreover, "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). This is because in formulating the RFC, the ALJ must "consider all of [the claimaint's] medically determinable impairments of which [she is] aware, including [the] medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). The ALJ in this matter did so. In her discussion of the RFC, she specifically referenced Plaintiff's reports of dizziness, (AR, at 23, 24), and as a result found that "he can never climb ladders, ropes, or scaffolds." (*Id*. at 24). But the ALJ balanced that finding with a determination that "[t]he record does not show that [Plaintiff] requires an assistive device to stand," because "[t]hrough the recent record, [he] often denied lightheadedness, dizziness, loss of balance, and difficulties with

coordination." (*Id.*) (citing *id.* at 1222, 1317, 1333, 1344, 1398). The ALJ's consideration of these symptoms sufficiently took into account the effects of Plaintiff's vertigo.

### B. The Record Before the ALJ Was Adequate Regarding Plaintiff's Head Injury.

Plaintiff complains that

> [o]n page 405 of the documentation, Exhibit 2F, the record is incomplete as regards to the severity of the initial head injury. The doctor in question did not send all relevant materials to the Social Security Administration leaving out a Form 5 for Workers Compensation that states the Plaintiff suffers from Post-Concussion Syndrome which can have lasting problems according to the National Institutes of Health. The amount of time the Plaintiff has struck his head before the actual recorded concussion because of his 6 foot 4 stature is numerous and may have played a contributing factor to the actual recorded concussion.

(Doc. 18, at 2). The Exhibit referenced by Plaintiff is a note of a visit with Dr. Jason Leinen on September 24, 2019. (AR, at 405-07). The note specifically lists "post-concussion syndrome" as part of the doctor's assessment of Plaintiff's condition. (*Id.* at 406). The note provides significant detail about Plaintiff's head injury, stating:

> Patient returns to the clinic today to follow-up on his work related head injury/concussion and associated post-concussive symptoms related to an initial incident on 6/7/2019. . . . Overall he is feeling better, and has been trying to do a bit more active things around his house and property. However, he continues to have difficulty with a return of dizziness and headache symptoms as well as sensitivity to light and some mental and generalized fatigue with increased physical activities/exertion.

(*Id.* at 405). The doctor's assessment of Plaintiff's "closed head injury, subsequent encounter" states "[o]verall this patient continues to have some persistent post-concussive symptoms. He has improved with treatments and therapies to this point. . . . I simply think this injury is going to take a bit longer to resolve . . . . I am hopeful that he will improve

with continued conservative treatments." (*Id*. at 406). This medical record adequately describes the effects of Plaintiff's head injury and ongoing concussion symptoms, and the ALJ refers to Dr. Leinen's treatment records in her decision. (*Id*. at 20, 25). An additional Workers Compensation Form with substantially the same information would not be material to the ALJ's consideration. Moreover, Plaintiff's proffer about previous impacts to his head appears to be nothing more than speculation. Thus, the undersigned finds that the record before the ALJ as to Plaintiff's head injury was adequate.

**C. The ALJ Adequately Considered Plaintiff's Symptoms of Back Pain.**

Plaintiff asserts that "the ALJ states the Plaintiff can stand for 4 of 8 hours and sit for 6 of 8 hours. Throughout the documentation there are statements by the plaintiff that he can stand for no longer than 10 minutes after which he requires at least 30 minutes of rest for back pain." (Doc. 18, at 2-3). The undersigned construes this statement as a challenge to the ALJ's assessment of Plaintiff's symptoms of back pain.

> The Commissioner has a two-step process for evaluating a claimant's symptoms, that is, his or her subjective statements about his or her impairments and limitations. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At the first step, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* at *3. If so, at the second step, the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms . . . and determine[s] the extent to which [a claimant's] symptoms limit his or her ability to perform work-related activities." *Id.* at * 4. In making this evaluation, the ALJ considers the medical evidence of record, along with several factors, including the claimant's activities of daily living. *See id.* at *7.

*James v. Comm'r, SSA*, 2024 WL 1133442, at *3 (10th Cir. Mar. 15, 2024). The factors other than the medical evidence are: (1) daily activities; (2) the location, duration,

frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. *See* Social Security Ruling ("SSR") 16-3p. 2017 WL 5180304, at *7-8.

The ALJ specifically acknowledged that Plaintiff "alleges disability due to pain when he stands longer than 10 minutes." (AR, at 23). The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) In making that finding, the ALJ considered the requisite factors, citing normal findings from medical records and improvements with medication as well as reasoning that the limitations in the RFC would address Plaintiff's pain. Specifically, the ALJ stated:

> [t]he claimant has lumbar and cervical degenerative disc disease, and the undersigned considered this in limiting the claimant's standing, walking, lifting, and carrying. In 2017, the claimant had a cervical anterior fusion. The claimant's hardware has generally been considered intact. . . . The claimant had normal strength, normal reflexes, intact sensation, normal gait, and normal coordination. . . . The claimant can lift, carry, push, and pull 10 pounds frequently and 20 occasionally, which minimizes the weight on his spine. Addressing his reported pain, he can stand and walk for 4 hours of 8. His strength, gait, and coordination are consistent with the residual functional capacity. In 2021, the claimant reported at least 80% improvement from his sacroiliac joint lock. He reported that his symptoms were controlled. In 2022, the claimant's gait was slightly slowed. He had some limitation in his cervical range of motion. Again, the standing and walking limitations address

> these issues. The claimant's 2022 physical examinations showed normal neurological findings, normal extremities, and no issue with edema. These findings show no limitation with sitting for 6 hours. The claimant's strength was 4+/5 throughout his extremities. The claimant's lumbar symptoms were managed with lumbar steroid injections. In late 2022, the claimant reported that his medication improved his pain from a 9 on a 10-scale to a 5. . . . The undersigned considered the claimant's ongoing complaints of back pain in limiting his lifting and carrying to 10 pounds frequently and 20 occasionally. . . . In 2024, the claimant reported 90% improvement in his symptoms after a steroid injection. He was able to increase activity. The claimant's lumbar range of motion was normal. His hip strength was 4/5 on the left and full on the right. . . . The claimant's radiculopathy was described as well-controlled.

(*Id.*) (record citations omitted). The ALJ considered Plaintiff's activities of daily living, stating that "[t]he claimant reported being able to do dishes, care for pets, and do laundry. . . . In late 2022, the claimant reported that he was able to do more work around his home and yard." (*Id.* at 24).

Thus, the ALJ did not apply an incorrect legal standard in conducting the symptom analysis. Rather, the ALJ appropriately considered and weighed the relevant factors, and her conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," (*id.* at 26), was supported by substantial evidence. Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008).

### D. The ALJ Properly Considered Medical Records from a Doctor's Visit Relating to a Workers Compensation Claim, While Properly Ignoring the Disability Ratings.

Plaintiff argues that "[t]he ALJ states that evidence provided from Workers Compensation government and non-government agencies and non-medical sources was not relevant in this case but the documentation provided (Exhibit 7F/5) is from a qualified medical professional." (Doc. 18, at 3). Plaintiff appears to refer to the following statement in the ALJ's decision:

> The undersigned notes that there are Worker's Compensation **determinations/disability ratings** of record (7F/5). The regulations clarify that **decisions** by other governmental agencies and nongovernmental entities are considered evidence from non-medical sources and are inherently neither valuable nor persuasive (20 CFR 404.1520b(c)). Accordingly, although the *undersigned has considered all of the evidence in this case*, no written analysis is provided for consideration of any **decisions** made by other governmental or nongovernmental entities (including the Veteran's Administration).

(AR, at 25) (bold and italic emphasis added). The ALJ's analysis is consistent with applicable SSA regulations. Indeed, 20 C.F.R. § 404.1504 provides that:

> [o]ther governmental agencies and nongovernmental entities — such as the Department of Veterans Affairs . . . — make **disability . . . and other benefits decisions** for their own programs using their own rules. Because a **decision** by any other governmental agency or a nongovernmental entity about whether you are disabled . . . is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules. Therefore. . . we will not provide any analysis in our determination or decision about a **decision** made by any other governmental agency or a nongovernmental entity **about whether you are disabled** . . . . However, *we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision* that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

(Bold and italic emphasis added). The SSA has deemed decisions by other governmental agencies and nongovernmental agencies "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." *Id*. § 404.1520b(c)(1).

Thus, as the ALJ articulated, the ALJ properly considered the medical evidence in the case – including the medical history and physical observations taken by Dr. Lonnie Litchfield, a medical professional (*see id*. at 20, 21, 23) (considering Exhibit 7F/1-6 (AR, at 617-622)) – while properly ignoring the disability determinations or ratings that he was asked to render for the purposes of Workers Compensation.

**E. The Court Declines To Reweigh the Evidence Relating to Plaintiff's Headaches.**

Plaintiff argues he

> [i]s subject to daily headaches and nausea which require a period of rest in a supine position for relief, such requirements would not be able to be accommodated by an employer, also the amount of sick days for such reasons would preclude the Plaintiff from gainful employment.
>
> The citing of a lack of reports by the ALJ for dizziness, nausea and headaches in doctor's notes can be explained by either the Plaintiff not having the symptoms at the time or the doctor simply not asking about the issues because the doctor does not cover that area of expertise.

(Doc. 18, at 3). The undersigned construes this argument as a challenge to whether the ALJ sufficiently considered Plaintiff's reported symptoms of headaches and nausea severe enough to require rest or taking sick days.

Plaintiff testified at the administrative hearing before the ALJ that he can no longer play video games or watch television because they cause him to experience "headaches and dizziness and nausea." (AR, at 43). He testified that he gets headaches "usually several

times a day, lasting anywhere from 20 to 30 minutes to three to four hours depending on what triggered it." (*Id.*) For "concentration headaches," he takes Tylenol or ibuprofen, but for the "other headaches" – which he later clarified were cervicogenic headaches – he needs to lay down for 30 minutes to three hours. (*Id*. at 43, 46). Later in the hearing, Plaintiff clarified that it is the type of headaches that Tylenol can help with, concentration headaches, that happen three to four times a day. (*Id*. at 68).

At the hearing, Plaintiff's attorney questioned the Vocational Expert ("VE") about job availability when a person is "off task 15% of the day" and when the person "required an additional break in the morning of 15 minutes and in the afternoon of 15 minutes." (*Id*. at 79). The ALJ also questioned the VE about the acceptable tolerance for absenteeism for maintaining employment. (*Id.*) The ALJ asked the VE "if an individual needed to lie down during an eight-hour workday, could they maintain employment?" to which the answer was no. (*Id*. at 79-80).

Thus, it is evident that the ALJ considered Plaintiff's reported symptoms relating to the severity of his headaches, and she referenced the headaches in her decision. (*Id*. at 23). As mentioned by Plaintiff, the ALJ observed that "[t]hrough the recent record, the claimant often denied lightheadedness, dizziness, loss of balance, and difficulties with coordination." (*Id*. at 24). Plaintiff's implicit complaint that the ALJ did not find his headache symptoms warranted a finding of disability is a request for this Court to re-weigh the evidence and come to a conclusion different than the ALJ. This Court must decline that request. *Vigil*, 805 F.3d at 1201 (holding that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency") (internal quotation marks

omitted). "The ALJ was entitled to resolve [ ] evidentiary conflicts and did so." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

## VI. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the Court **AFFIRMS** the Commissioner's decision.

**IT IS SO ORDERED** this 30th day of September, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE